UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

ERIC BARNA,                          )
                                     )
        Plaintiff,                   )
                                     )
v.                                   )          3:24-CV-109-JEM
                                     )
COMMISSIONER OF SOCIAL SECURITY,     )
                                     )
        Defendant.                   )

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 10]. Now before the Court is Plaintiff's Motion for Summary Judgment [Doc. 13]. Eric Barna ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Commissioner of Social Security ("Commissioner"). For the reasons set forth below, the Court will **DENY** Plaintiff's Motion for Summary Judgment [**Doc. 13**] and will **AFFIRM** the decision of the Commissioner.

## I.    PROCEDURAL HISTORY

On October 25, 2022, Plaintiff filed for Disability Insurance Benefits [Tr. 169] pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*. Plaintiff initially claimed a period of disability that began on January 1, 2017 [*id.*] but later amended the alleged onset date to April 23, 2020 [*id.* at 41, 265]. After his claims were denied initially [*id.* at 59, 64] and upon reconsideration [*id.* at 66, 71–72], Plaintiff requested a hearing before an ALJ [*id.* at 93]. A hearing was held on August 16, 2023, before ALJ Suhirijahaan Morehead (hereinafter "ALJ Morehead" or "the ALJ") [*Id.* at 34–57]. On December 5, 2023, ALJ Morehead found Plaintiff not disabled [*Id.* at 14–29].

Plaintiff asked the Appeals Council to review the ALJ's decision [*Id.* at 165–67]. The Appeals Council denied Plaintiff's request for review [*id.* at 1], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on March 7, 2024, seeking judicial review of the Commissioner's final decision under 42 U.S.C. § 405(g) [Doc. 1]. The parties have filed opposing briefs, and this matter is now ripe for adjudication [Docs. 13, 14 & 16].

## II.    DISABILITY ELIGIBILITY AND ALJ FINDINGS

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will only be considered disabled:

> [I]f his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a

listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e), 416.920(a)(4), 416.920(e). RFC is the most a claimant can do despite his limitations. *Id.* §§ 404.1545(a)(1), 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

Here, the ALJ made the following findings:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2020.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of January 1, 2017 through his date last insured of December 31, 2020 (20 CFR 404.1571 et seq.).

3. Through the date last insured, the claimant had the following severe impairments: post-traumatic stress disorder (PTSD), depression, anxiety, photophobia, and migraine headaches primarily triggered by photophobia. (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the

severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: he cannot climb ladders, ropes, and/or scaffolds; cannot have exposure to workplace hazards, including unprotected heights or moving machinery; cannot do work requiring driving as part of his work duties; cannot do jobs performed primarily outdoors; can understand, remember and carry out simple and detailed, but not complex, instructions; can have no interactions with the public; cannot perform work requiring him to meet a specific production rate, such as assembly line work or work that requires hourly quotas; and can deal with only occasional changes in a routine work setting.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on May 1, 1981 and was 39 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from January 1, 2017, the alleged onset date, through December 31, 2020, the date last insured (20 CFR 404.1520(g)).

[Tr. 19–29].

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision

was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). In reviewing the Commissioner's decision, the Court must consider the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Hum. Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court has explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 103 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In determining whether an ALJ's findings are supported by substantial evidence, the Court does not try the case de novo, weigh the evidence, or make credibility determinations nor resolve conflicts in the

evidence, nor decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In addition to considering whether the ALJ's decision is supported by substantial evidence, the Court must review whether the ALJ employed the correct legal criteria. It is grounds for reversal of a decision—even if supported by substantial evidence—where "the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Hum. Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

## IV.   ANALYSIS

Plaintiff raises two issues on appeal. First, he argues that the ALJ improperly analyzed the "Paragraph B criteria," as she neither included the significant history and functional limitations that she considered nor listed examples of work activities [Doc. 14 pp. 6, 14]. Second, Plaintiff argues that the ALJ did not follow the regulations to address medical source opinions [*Id.* at 7, 9–11]. The Commissioner responds that the ALJ properly evaluated the Paragraph B criteria and the opinion evidence, relying on substantial evidence at both steps [Doc. 16 pp. 5, 8].

For the reasons explained below, the Court finds the ALJ properly concluded, as substantial evidence supports, that Plaintiff's mental impairments moderately limit his functioning and thus, do not satisfy the Paragraph B criteria. Consistent with the regulations, the ALJ explained how she

6

evaluated the persuasiveness of the medical opinion evidence and crafted an RFC assessment supported by substantial evidence.

### A.        Paragraph B Criteria

Plaintiff first argues that the ALJ did not include adequate rationale in his decision to support the findings regarding the "Paragraph B criteria" [Doc. 14 p. 4]. Specifically, Plaintiff claims, the ALJ failed to follow the Agency's rules and regulations because the analysis "contains neither (1) significant history, such as examination and laboratory findings, or the functional limitations that were considered . . . , nor (2) examples of work activities . . ." [*Id.* at 6].

The Commissioner contends that the ALJ properly evaluated Plaintiff's mental impairments at step three [Doc. 16 p. 5]. Reading the decision as a whole, the Commissioner argues, shows that the ALJ relied on substantial evidence [*Id.*]. The Commissioner asserts that the ALJ considered the record, including examination results and daily activities, to obtain a "longitudinal picture" showing Plaintiff had, at most, moderate limitations during the relevant time period" [*Id.*].

The Regulations proscribe a "special technique" to evaluate mental impairments. 20 C.F.R. § 404.1520a(a). To evaluate whether a severe mental impairment meets or medically equals a listed impairment, the ALJ rates the degree to which the impairment functionally limits the claimant's ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A(2)(b). Set forth in Paragraph B of the listings for mental impairments, these four areas are known as the "Paragraph B criteria." *Id.* The degree of limitation is rated along a five-point scale as none, mild, moderate, marked, and extreme. *Id.* § 12.00F(2). To satisfy the Paragraph B criteria, the claimant must have either one "extreme" limitation or two "marked" limitations. *Id.*

In evaluating a claimant's mental impairments, the ALJ must consider "multiple issues and all relevant evidence to obtain a longitudinal picture of the overall degree of functional limitation." 20 C.F.R. § 404.1520a(c)(1). Further, the ALJ's decision must document how she applies this technique and "incorporate the pertinent findings and conclusions . . . , show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)[, and] include a specific finding as to the degree of limitation in each of the functional areas" *Id.* § 404.1520a(e)(3)–(4).

Here, as required, the ALJ properly applied this technique to conclude that Plaintiff's mental impairments moderately limit his ability to function in each of the four areas, which substantial evidence supports. The ALJ's analysis dedicated to the Paragraph B criteria shows the history she considered, including his past work, education level, relevant medical findings, reported daily activities, and the skills and behavior he demonstrated at the hearing. 20 C.F.R. § 404.1520a(e)(4) (requiring the ALJ's decision to show the history considered in concluding degree of functional limitation). She noted that Plaintiff is a high school graduate who previously performed skilled work and considered that he had "generally normal findings in a neutral clinical setting," including normal attention, concentration, cognition, and understanding [Tr. 20]. She evaluated Plaintiffs' daily activities of writing and playing music as well as managing medical and household matters under reportedly stressful conditions [Tr. 20]. She explained that he has an "ability to assiduously pursue his goals" and good communication skills, highlighting that he calmly and articulately testified at the hearing [Tr. 20–21]. She showed what limitations she considered as well, noting allegations of a traumatic brain injury in considering his ability to understanding, remember, or apply information, and findings of occasional irritability and stubbornness as well as one episode of argumentativeness, in considering his ability to interact

with others [Tr. 20]. 20 C.F.R. § 404.1520a(e)(4) (requiring the ALJ's decision to show the limitations considered in concluding degree of functional limitation).

Elsewhere in the decision, the ALJ also considered that Plaintiff reported difficulties in social interactions, but that Plaintiff is, as he claims, a "tenacious advocate," he can interact well with his health care providers, family, store personnel, and neighbors, and the record showed no significant behavioral deficits [Tr. 26]. *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (reasoning that the ALJ's decision should be read as a whole); *Warren v. Comm'r of Soc. Sec.*, No. 3:23-00077, 2024 WL 409390, at *9 (E.D. Tenn. Feb. 2, 2024) (considering the ALJ's discussion of RFC to support the ALJ's analysis of Paragraph B criteria (citing *Staggs v. Astrue*, No. 2:09-CV-97, 2011 WL 3444014, at *3 (M.D. Tenn. Aug. 8, 2011)). She cited findings that Plaintiff had normal attention and concentration, good mental status albeit a depressed mood, and reported improved sleep. [Tr. 24]. She detailed more of Plaintiff's "significant activity level with no evidence of frequent restrictions or interruptions," noting also that he bikes, lifts weights, and is actively involved in caring for his mother by working in the yard, shopping, and driving her to appointments [Tr. 25, 27].

Evidence from the record supports the ALJ's conclusions: provider notes repeatedly found no evidence of psychosis and indicate that Plaintiff displayed good concentration and intact attention, had appropriate, relevant, logical thought processes, and was cooperative and pleasant [*E.g.*, *id.* at 340, 344, 362, 412]. Provider notes also detail Plaintiff's reports of caring for his mother and maintaining cordial relationships with friends and neighbors [*Id.* at 996, 998, 1004, 1014]. The decision contains substantial evidence—both within the Paragraph B criteria analysis at step three and throughout—which, along with the evidence of record, shows that the ALJ

9

obtained a "longitudinal picture" of Plaintiff's overall degree of functional limitation. 20 C.F.R. § 404.1520a(c)(4)(1).

Discussing his ability to interact with others and concentrate or maintain pace, Plaintiff points to subjective evidence of his limitations. As noted above, the ALJ considered the symptoms and restrictions that Plaintiff reported, including with social interaction and isolation. The ALJ is not required to accept Plaintiff's subjective complaints if, as here, she finds they are inconsistent with objective evidence—a determination which receives great deference on review. *Roedeshimer v. Comm'r of Soc. Sec.*, No. 1:23-CV-1085, 2024 WL 1771150, at *16 (N.D. Ohio Apr. 3, 2024) (citations omitted), *report and recommendation adopted*, No. 1:23-CV-1085, 2024 WL 1765582 (N.D. Ohio Apr. 23, 2024). Moreover, Plaintiff does not challenge the ALJ's evaluation of his subjective complaints.

Nor does Plaintiff cite any evidence that the ALJ omitted in considering his degree of limitation in his abilities to understand, remember, and apply information or adapt and manage himself. Accordingly, he falls short of meeting the burden he bears at this stage. *See Sellers v. Saul*, No. 1:19-CV-362, 2021 WL 9526872, *4 (E.D. Tenn. Mar. 24, 2021) (collecting cases and explaining that a claimant has the burden at step three and must present specific findings to satisfy each element of listing).

Finally, Plaintiff argues that the ALJ focused too heavily on his routine activities at home failed to consider his ability to perform these activities on a sustained basis or his abilities to regulate emotions, control his behavior, and maintain well-being in a work setting [Doc. 14 pp. 6–7]. But the Court cannot "reweigh the medical evidence and conclude itself whether [Plaintiff] satisfies the Paragraph B criteria," as this argument demands. *Robbins v. Comm'r of Soc. Sec.*, No. 1:22-CV-02049-SO, 2023 WL 8769603, at *12 (N.D. Ohio Oct. 20, 2023), *report*

*and recommendation adopted*, No. 1:22 CV 2049, 2024 WL 78276 (N.D. Ohio Jan. 8, 2024), *aff'd*, No. 24-3201, 2024 WL 4603964 (6th Cir. Oct. 29, 2024). Rather, because Plaintiff has not demonstrated that the ALJ's analysis contravenes any Agency rules or regulations, the Court must affirm the decision so long as the ALJ's "'findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision.'" *Id.* (quoting *Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003)). Such is the case here.

### B.        Assessment of Medical Opinions

Plaintiff argues that the ALJ did not address medical source opinions according to the Agency's regulations [Doc. 14 p. 7]. Plaintiff challenges how the ALJ considered the opinions of three medical sources: Alesha Martin, LCSW ("Ms. Martin"), Zeke Grissom, O.D., ("Dr. Grissom"), and Amanda Gillespie, LPC-MHSP (temp), NCC ("Ms. Gillespie") [*Id.* at 9–11].

The Commissioner argues that the ALJ "properly explained how she considered the opinion evidence" [Doc. 16 p. 20]. Arguing that Plaintiff has not shown the ALJ's findings are unsupported by substantial evidence, the Commissioner urges the Court to defer to the ALJ's findings [*Id.* at 20–21].

At step four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence, including medical opinions. 20 C.F.R. § 404.1520(e). An ALJ must evaluate the persuasiveness of medical opinions using five factors, the most important of which are supportability and consistency. *Id.* § 404.1520c(a), (b)(2). An opinion is "more persuasive" when the objective medical evidence and supporting explanations used to support the opinion are "more relevant" (supportability) and if they are "more consistent" with evidence from other medical and non-medical sources (consistency). *Id.* § 404.1520c(c)(1), (c)(2). An ALJ must "articulate how

[she] considered the medical opinions," specifically, the supportability and consistency factors. *Sparks v. Kijakazi*, No. 2:21-CV-102, 2022 WL 4546346, at *6 (E.D. Tenn. Sept. 28, 2022) (quoting 20 C.F.R. § 404.1520c(a), (b)(2)).

"[T]he Sixth Circuit has not elucidated a specific standard to determine whether an ALJ sufficiently complied with the [articulation] requirement." *Gavre v. Comm'r of Soc. Sec.*, No. 3:20-CV-00551, 2022 WL 1134293, at *4 (W.D. Ky. Jan. 3, 2022). But courts "within this circuit and throughout the country consistently apply the articulation requirement literally," *id.* (citations omitted), requiring ALJs to coherently explain their reasoning and how they considered the opinion—including its consistency and supportability—and "identify the evidence supporting [her] conclusions," *Jones v. Comm'r of Soc. Sec. Admin.*, No. 3:23-CV-10, 2023 WL 9503739, at *5 (E.D. Tenn. Dec. 12, 2023) (citing *Kirkland v. Kijakazi*, No. 3:22-CV-60, 2023 WL 3205330, at *9 (E.D. Tenn. May 2, 2023)).

For the reasons discussed below, the Court finds that the ALJ applied the correct legal standards to evaluate the opinions of Ms. Martin, Dr. Grissom, and Ms. Gillespie. She explained how she considered the persuasiveness of each opinion, focusing on Plaintiff's functional limitations during the period of disability, and connected the evidence she relied on to the conclusions she reached.

### 1. Alesha Martin, LCSW

Plaintiff states that the ALJ did not "articulate how [s]he considered the supportability of Martin's opinion, leaving the Court unable to properly review her consideration of the opinion" [Doc. 14 p. 8]. Acknowledging that Ms. Martin's opinion is outside of the relevant time period, Plaintiff argues that "it still remains pertinent to the foundation of Plaintiff's symptoms/impairments and subsequent questionable improvement/lack of deterioration" [*Id.*].

Plaintiff states that while Ms. Martin limited his social interaction without distinguishing between the general public, co-workers, and supervisors, the ALJ limited Plaintiff to no interaction with the public but did not limit interaction as to co-workers and supervisors [*Id.*]. Thus, Plaintiff argues, Ms. Martin's opinion "conflicts with the RFC and the ALJ failed to explain why the opinion was not adopted" [*Id.*] Lastly, Plaintiff argues that the ALJ stated that evidence shows no subsequent deterioration without citing evidence to show improvement in Plaintiff's ability to relate socially [*Id.*].

The Commissioner contends that the ALJ reasonably explained that Ms. Martin's opinion was not relevant to the appropriate time period, as she provided the opinion after Plaintiff was last insured and the opinion does not relate back to the relevant period [Doc. 16 pp. 9–10]. Further, the Commissioner argues, the ALJ properly explained that Ms. Martin's opinion was not persuasive because it included no specific limitations that the ALJ was required to incorporate into the RFC [*Id.* at 11]. Additionally, the Commissioner argues that Plaintiff does not demonstrate that the RFC is inconsistent with Ms. Martin's opinion [*Id.* at 11–12].

Here, as Plaintiff concedes, Ms. Martin's opinion falls outside the relevant period between the amended alleged onset date, April 23, 2020, and the date Plaintiff was last insured, December 31, 2020 [Tr. 19, 41, 265, 1093]. *See Lowery v. Comm'r of Soc. Sec.*, 886 F. Supp. 2d 700, 716 n.8 (S.D. Ohio 2012) ("In determining whether a Plaintiff is 'disabled,' the ALJ generally only considers evidence from the alleged disability onset date through the date last insured." (citation omitted)). Evidence obtained after this period is "generally of 'little probative value' unless it 'relate[s] back to the claimant's condition prior to the expiration of [his] date last insured.'" *Willard v. Colvin*, No. 3:15-CV-7, 2016 WL 6501080, at *5 (E.D. Tenn. Feb. 11, 2016) (citations omitted), *report and recommendation adopted*, No. 3:15-CV-7, 2016 WL 6496237 (E.D. Tenn. Nov. 2,

2016). "For an opinion outside the period at issue to be considered, a claimant must demonstrate it relates to a claimant's functional limitations within the relevant period." *Kubas v. Comm'r of Soc. Sec. Admin.*, No. 1:22-CV-856, 2023 WL 4744279, at *7 (N.D. Ohio July 25, 2023) (quoting *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990)). Evidence that predates this period is, likewise, of "limited relevance." *Sellers*, 2021 WL 9526872, at *5 (finding no fault in ALJ's giving little weight to opinion that predated onset). The Sixth Circuit has "recognize[d] that evidence . . . predating the onset of disability, when evaluated in combination with later evidence, may help establish disability." *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 414 (6th Cir. 2006) (emphasis omitted). More recently, though, the Court of Appeals rejected the argument that an ALJ was required to consider the opinion of physician who only treated the claimant before the time period at issue. *Amburgey v. Comm'r of Soc. Sec.*, 751 F. App'x 851, 866 (6th Cir. 2018).

Ms. Martin provided her opinion two and a half years after Plaintiff was last insured [Tr. 41, 265, 1093]. It is of "little probative value" unless Plaintiff shows that it relates back to the period at issue. *Kubas*, 2023 WL 4744279, at *7. He states that her opinion is pertinent to the foundation of his impairments but does not explain how her opinion is "demonstrative of the claimant's actual limitations and ability to do work during the relevant time period." *Willard*, 2016 WL 6501080, at *5 (citing *Higgs v. Brown*, 880 F.2d 860, 863 (6th Cir. 1988)). Additionally, because Ms. Martin stopped treating Plaintiff two years before the amended alleged onset date of his disability [Tr. 19, 1093], the ALJ was not required to consider her opinion. *Amburgey*, 751 F. App'x at 866.

Moreover, the ALJ reasonably explained that Ms. Martin's opinion was not persuasive as she did not set forth any specific functional limitations. *Kubas*, 2023 WL 4744279, at *6–7 (N.D. Ohio July 25, 2023) (reasoning that "[b]ecause [assessments of depression and anxiety] are

not functional limitations, the ALJ was not required to review them under § 404.1520c" and holding that the ALJ was not required to review the supportability and consistency factors). Plaintiff states that her opinion "provided serious limitations in social interaction" [Doc. 14 p. 9]. Ms. Martin did comment on how Plaintiff's PTSD limited his ability to interact with others, describing that he "had challenges engaging with people" and "was struggling with interpersonal skills" [Tr. 1092–93]. Even so, these statements are "too vague to meaningfully contribute to [Plaintiff's] RFC determination." *Rice v. Kijakazi*, No. 3:20-CV-750, 2022 WL 345652, at *3 (W.D. Ky. Feb. 4, 2022) (citations omitted). The ALJ appropriately concluded that Ms. Martin's opinion, without specific functional limitations for the time that Plaintiff alleges he was disabled, was not persuasive.

Plaintiff argues that the RFC assessment conflicts with Ms. Martin's opinion and asserts that the ALJ failed to explain why she did not adopt the opinion. Where an RFC assessment conflicts with a medical opinion, the ALJ must explain the decision to not adopt the opinion. *See* SSR 96-8p, 1996 WL 374184, at *7. "But in deciding whether the ALJ has adequately 'explained' the decision . . . , this Court's review is largely constrained to whether that explanation is rational such that the Court can 'trace the path of [its] reasoning.'" *Stephen D. v. Comm'r of Soc. Sec.*, 734 F. Supp. 3d 729, 741 (S.D. Ohio 2024) (citing *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011)) (alteration in original).

As noted above, Ms. Martin's opinion did not contain specific limitations that would conflict with those in the RFC calculation. Even so, the ALJ laid out traceable reasons for finding Ms. Martin's opinion unpersuasive: she explained that the opinion did not define any clear functional limitations, either for 2018 or that were relevant to the time of alleged disability.

Plaintiff identifies a difference between RFC assessment and Ms. Martin's opinion, noting that the RFC assessment limits him to no interaction with the public while Ms. Martin did not distinguish between groups when describing his challenges in social interaction. This explains neither how the RFC assessment is inconsistent with Ms. Martin's opinion nor precludes him from working, as is his burden. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) (citing *Her*, 203 F.3d at 392); *Hernandez-Matta v. Comm'r of Soc. Sec.*, No. 3:17-CV-145, 2018 WL 1542143, at *7 (W.D. Ky. Mar. 29, 2018) (citation omitted)) (rejecting conclusory argument that ALJ erred by failing to adopt opined limitations because the plaintiff did not explain how the RFC was inconsistent with the opined limitations or precluded him from working at all).

Finally, Plaintiff contends that the ALJ improperly analyzed Ms. Martin's opinion because she stated available evidence shows no subsequent deterioration without citing the record to show improvement in Plaintiff's ability to relate. But evidence that Plaintiff improved is not needed to support that he did not deteriorate. Throughout the opinion, the ALJ cited evidence of Plaintiff's ability to relate during the period at issue, including the findings of generally appropriate behavior, the interactions he reported having with neighbors, store personnel, and friends, and his skills in self-advocacy and communicating that he identified in treatment and demonstrated at the hearing [Tr. 24–26]. Especially as Plaintiff bears the burden at this stage, "[t]he Court is hesitant to require the ALJ to scour the record to prove the negative." *Rakes v. Colvin*, No. 14-321, 2015 WL 5310783, at *6 (E.D. Ky. Sept. 8, 2015).

In sum, the ALJ evaluated Ms. Martin's opinion in line with the regulations. She articulated her reasons for finding that it did not persuasively define Plaintiff's mental limitations for the relevant period, which substantial evidence supports.

### 2. Zeke Grissom

Plaintiff argues that although Dr. Grissom opined that he would require appropriate lighting and/or eye protection, "the RFC is silent as to limitations regarding appropriate lighting and/or eye protection" [Doc. 14 p. 10]. He contends that the ALJ "failed to fully analyze [Dr. Grissom's] opinion" and "did not explain why the need for protective eye wear was not adopted" [*Id.* at 10–11].

The Commissioner initially notes that Dr. Grissom authored this opinion after the date that Plaintiff's was last insured and contends that no evidence demonstrates the opinion relates to the relevant time period [Doc. 16 p. 13]. Next, the Commissioner argues that by limiting Plaintiff to no work performed primarily outdoors, the ALJ properly incorporated Dr. Grissom's opinion into the RFC finding [*Id.* at 12]. The Commissioner also contends that Plaintiff has not established that the ALJ's RFC finding is inconsistent with Dr. Grissom's opinion [*Id.*]. Further, the Commissioner contends, the ALJ was not required to incorporate the specific limitation for eye protection in the RFC finding [*Id.* at 14]. Lastly, the Commissioner argues that omitting a limitation for protective eyewear from the RFC finding was "not significant" [*Id.* at 15].

The Commissioner is correct that Dr. Grissom's opinion, authored in August 2023, falls outside the time period that an ALJ generally considers [Tr. 41, 265, 1100]. But this does not prohibit the ALJ from considering the evidence. *See Lowery*, 886 F. Supp. 2d at 716 n.8. Yet beyond briefly noting its date, the ALJ did not discount Dr. Grissom's opinion nor discuss its timing. Instead, she found his conclusion that Plaintiff would require "appropriate lighting and/or eye protection" to be "generally supported and persuasive" [Tr. 26]. The Commissioner's argument about the relevance of Dr. Grissom's opinion does not address the issues raised about the ALJ's decision presently before the Court. *See O'Malley v. Comm'r of Soc. Sec.*, 210 F. Supp. 3d 909, 914 (S.D. Ohio 2016) (finding unavailing an argument that relied on a finding

that the ALJ did not make as "[i]t is the opinion given by an administrative agency rather than counsel's '*post hoc* rationale' that is under the Court's consideration" (quoting *Romig v. Astrue*, No. 1:12–cv–1552, 2013 WL 1124669, at *6 (N.D. Ohio Mar. 18, 2013))); *see generally Berryhill v. Shalala*, No. 92-5876, 1993 WL 361792, at *6 (6th Cir. 1993) (applying doctrine announced *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947), to SSI benefit case and restricting reviewing court to judge agency action on grounds invoked by the agency).

The regulations assign the responsibility of calculating Plaintiff's RFC to the ALJ, not a medical provider. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) (citation omitted). The ALJ need not craft an RFC determination that parrots, mirrors, or even incorporates each element of an opinion that she finds persuasive. *See id.*; *Ephraim v. Saul*, No. 1:20-CV-633, 2021 WL 327755, at *13 (N.D. Ohio Jan. 8, 2021) ("Thus, although the ALJ deemed Dr. Todd's opinion 'persuasive,' and stated that he was rewording her recommended limitations, he was not required to include every element of all of her proposed limitations in the RFC or explain why he did not adopt all of the proposed limitations." (citation omitted)), *report and recommendation adopted sub nom.*, *Ephraim v. Comm'r of Soc. Sec.*, 2021 WL 325721 (N.D. Ohio Feb. 1, 2021). The ALJ must, however, "make a connection between the evidence relied on and the conclusion reached." *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019).

Here, the ALJ connected the evidence of Plaintiff's light-related impairments to the restrictions included in her RFC calculation. She explained that she added a limit of no outdoor work to incorporate the restrictions that Dr. Grissom opined [Tr. 26]. Recognizing Plaintiff's diagnoses of migraines and photophobia, she noted that Plaintiff's headaches improved while he was staying indoors [*Id.* at 25]. The ALJ also considered that providers from the Department of Veterans Affairs recommended no outdoor work [*Id.* at 22]. Lastly, the ALJ observed that although

Plaintiff testified that sun exposure or prolonged exposure to computer light affected his activity, "the record show[ed] a significant activity level" [*Id.* at 25]. Further supporting the ALJ's decision to incorporate Plaintiff's impairments by restricting him to no outdoors work, he characterized his impairment as "an acute heliophobia" and remarked that "[s]unlight is very powerful" [Tr. 48]. The ALJ connected the RFC assessment to the evidence, which is substantial.

### 3. Amanda Gillespie

Plaintiff states that the ALJ "improperly analyzed Ms. Gillespie's opinion," which, along with other evidence, "support[s] a limitation of no interaction with coworkers, supervisors, and the public, while also requiring Plaintiff to work in isolation" [Doc. 14 p. 13].

The Commissioner notes that Ms. Gillespie's authored the relevant opinion more than two years after Plaintiff's date last insured and states that it was of "little probative value" [Doc. 16 p. 16]. Additionally, the Commissioner argues that the ALJ reasonably concluded that Ms. Gillespie's opinion was unpersuasive because it was neither supported by, nor consistent with, evidence in the record [*Id.* at 16–19]. Lastly, the Commissioner contends that Ms. Gillespie's opinion "was conclusory and devoid of sufficient supporting explanation," and therefore, "may be entitled to less weight" [*Id.* at 20].

The Commissioner is correct that Ms. Gillespie authored this opinion after the relevant time period. As with Dr. Grissom, in the decision before the Court, the ALJ did not find this opinion unpersuasive or irrelevant because of its timing. *O'Malley*, 210 F. Supp. 3d at 917.

Rather, the ALJ appropriately noted that the opinion takes the form of fill-in-the-blank statements. *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 630 (6th Cir. 2016) (allowing that the ALJ may consider the format of a medical opinion as a signal of unreliability). Check box or fill-in-the-blank forms, like the one Ms. Gillespie filled out, have been characterized as "findings

[] of limited value" and "weak evidence at best" that meets the "patently deficient standard." *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 475–76 (6th Cir. 2016) (citations omitted). Accompanied by brief and vague explanations, Ms. Gillespie's opinion consists of checkboxes rating Plaintiff's mental abilities, assessing the degree of functional limitation, and indicating the demands of work that Plaintiff finds stressful [Tr. 1104–1106]. *Toll v. Comm'r of Soc. Sec.*, No. 1:16-CV-705, 2017 WL 1017821, at *4 (W.D. Mich. Mar. 16, 2017) ("[T]he worksheet . . . is lacking in any explanation of how Plaintiff's diagnoses impose these severe restrictions on his ability to perform work."); *see also Terry A.C. v. Comm'r of Soc. Sec.*, No. 2:21-cv-5535, 2022 WL 2586479, at *5 (S.D. Ohio July 8, 2022) ("[C]heckbox forms with little or only minimal explanation . . . are of only limited value." (citing *Toll*, 2017 WL 1017821, at *4)).

The ALJ properly evaluated this check box, fill-in-blank form and found the opinion was not persuasive, adequately explaining that it was neither well-supported by Ms. Gillespie's treatment notes nor consistent with evidence of record. Plaintiff now cites evidence to argue for greater limitations in social interaction. But Ms. Gillespie did not cite this evidence to support her opinion; the Court cannot now reweigh the evidence. *See Pettigrew v. Berryhill*, No. 1:17-cv-01118, 2018 WL 3104229, at *13 n.13 (N.D. Ohio June 4, 2018) (recapping case in which "'a medical source statement,' which was in a 'check-box format' was an 'impotent addition to the record with little to no persuasive value,' and it was 'immaterial' if there was certain evidence in the record consistent with the opinion 'because the ALJ provided "good reasons" for discounting [the] opinion and [the] Court may not reweigh the evidence'" (quoting *Jackson v. Comm'r of Soc. Sec.*, No. 1:16-CV-14404, 2017 WL 4699721, at *7 (E.D. Mich. Oct. 19, 2017)), *report and recommendation adopted*, 2018 WL 3104229 (N.D. Ohio June 4, 2018).

Accordingly, the Court finds no error in the ALJ's analysis of Ms. Gillespie's opinion.

## V.  CONCLUSION

For the reasons explained, the Court the Court will **DENY** Plaintiff's Motion for Summary Judgment [**Doc. 13**] and will **AFFIRM** the decision of the Commissioner. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

ENTER:

Jill E. McCook
United States Magistrate Judge